Lessee of CHRISTIAN ESHELMAN, SUSANNAH ESHELMAN, ELIZABETH ESHELMAN, JOHN ESHELMAN and MARY his wife, PETER GILBERT and ANN his wife, *against* CASPER HOKE.

[S. C. 4 Dall. 168.]

Under the act of 1705, "for better settling of intestate's estates," the real estate of a mother, being a widow, is subject to the same rules of distribution, as that of a father dying intestate. Collateral warranty with sufficient real assets descending to heirs, will bar them from recovering the lands warranted, and the English statute of 4 and 5 Ann. c. 16, § 21, has never been extended to Pennsylvania.

EJECTMENT for one moiety of 213 acres of land in Paradise and Codorus townships, tried before Shippen and Yeates justices, at York, on the 26th April 1798, wherein the jury found a special verdict as follows:

That Mary Harshey was seized of the lands in question, and inter-married with David Eshelman, and died on the 1st May 1786 intestate; leaving issue six children, viz. Martin her eldest son, and Christian, Susannah, Elizabeth, Mary and Ann the lessors of the plaintiff.

" That the said David Eshelman on the 1st April 1785, in the life-time of his said wife, entered into articles of agreement with Casper Hoke, the defendant, that he, together with his wife, would convey to him the premises in question, exonerated of all claims and demands whatsoever, in fee simple, in consideration of 400l.

That the said David Eshelman, on the 1st April 1792, after the death of his said wife, by deed reciting the articles aforesaid, conveyed his interest as tenant by the curtesy, to Martin Eshelman, his eldest son, to enable him to make the conveyance stipulated by the articles.

That the said Martin Eshelman, in pursuance thereof, on the same day, in consideration of 500l., conveyed the premises to the said Cas-per Hoke, the defendant in fee simple, with a covenant of warranty against himself, his brother and sisters, and their respective heirs; and

the said David Eshelman, the father, by indorsement made on the same day, on the conveyance by the said Martin, his son, covenanted with the said Casper Hoke and his heirs, that he and his heirs would warrant and defend the premises against the other children by his said wife, to wit, the said Christian, Susannah, Elizabeth, Mary and Ann, and their respective heirs ; and the said David died in May 1794.

That real assets descended from the said David Eshelman to the lessors of the plaintiff, his several children, to a greater amount than the value of the lands in question, and that the said Casper Hoke, the defendant, had paid to Peter Gilbert, in right of Ann, his wife, one of the children, 100*l.* part of the consideration money. But whether upon these facts the law be with the plaintiff or defendant, the jurors know not ; if, &c."

The special verdict was argued at Nisi Prius by consent, the ensuing day after the taking thereof, by Mr. Hopkins for the plaintiff, and Messrs. Hamilton and Duncan for the defendant.

The defendant's counsel insisted, that Martin Eshelman was the heir at law, *ex* parte maternâ as the eldest son. That he was such at common law, there can be no question, and his right must remain, unless taken away by positive institutions. Such was the case as to brothers and sisters, uncles and aunts. A woman dying intestate is a *casus omissus* under the old law. Under the act of assembly of 4 *Annæ* (1705,) 1 Dall. St. Laws, Append. 43, the 2d section directs the distribution of the surplusage of an intestate amongst his widow and children in a certain manner. The term intestate must be applied to the case of a father, and not of a mother, the masculine gender being alluded to by the pronoun his. So in the 12th section, when such intestate shall have no known kindred, than all his lands, &c. shall escheat and go to the immediate landlord, &c. The 5th section of the act of 23d March 1764, *Ib* 48, provides only for the cases of posthumous children born after their father's death, who have not been provided for by the wills of their father or mother, that they shall take, as if their father or mother had died intestate, but goes no further. The late act of assembly of 19th April 1794, 3 Dall St. Laws, 521, supplies a number of these omissions, and shows the sense of the legislature on this subject, and the necessity of the alterations. The British statute of the 22 and 23 Car. 10, 3 Ruff. Stat. 357, made perpetual by stat. 1 Jac. 2, c. 17, § 5, is couched in the same terms as our municipal act of 1705, except so far as relates to the eldest son; and

yet in Holt v. Frederick, 2 Wms. 356, 2 Equ. Cas. Abr. 446, pl. 2, S. C. it was determined, that a mother being a widow and having advanced a child and dying intestate, leaving other children, such child so advanced should not bring what he received into hotchbot.

*E contra.* It was urged for the plaintiff, that the pronoun " his " included as well the feminine as masculine gender, according to the usual sense of the word " mankind," and the act of assembly being obviously made to introduce an equality amongst the children, except as to the double share of the eldest son, no reason could be assigned grounded on any system of policy or good sense, why an elder son should be more prefered on the death of a father than of a mother. On this equitable ground, in the case of Lloyd v. Tench, it was resolved by sir John Strange, in 2 Vez. 213, that the personal estate of a woman should be distributed in England, as if a man died intestate ; and of this opinion was the court clearly, who declared that such had been the uniform practice and received usage, as well before as since the revolution.

The plaintiff's counsel further contended, that admitting David Eshelman's covenant to warrant, indorsed on his son Martin's deed to the defendant, the plaintiff was not precluded thereby from a recovery. The difference between lineal and collateral warranty is perfectly well ascertained. The former is where the heir might by possibility have derived his title to the land warranted, either from or through the warranting ancestor, the latter is, where he could not thus have derived his title. 2 Bl. Com. 301, 302. The justice of barring the heir of the warrantor from claiming the land by any collateral title, where no assets descended, has been frequently questioned. Ib. 302. To remedy the inconvenience, in the case of tenants, by the curtesy aliening their lands with warranty, the statute of Gloucester, 6 Edw. 1, c. 3, declares that such warranty shall be no bar to the son, unless assets descended from the father, Ib. The present is a collateral warranty, as the lands in question can only be claimed by the lessors of the plaintiff, under their mother. The defendant holds under a grant by bargain and sale. But a warranty is not operative, unless where the estate is turned to a mere right ; it must be annexed to the estate. 10 Co. 96. Nor shall a warrant bar any estate of freehold in *esse*, in possession remainder or reversion, ( and not displaced and put to a right, ) before or at the time of the warranty made, though at the descent of the warranty, the estate of freehold be divested ; it cannot enlarge

an estate. *Ib*. 97, *a*. Hargr. Co. Lit. 374, *b*.   Had a feoffment been made in the present instance, it would have discontinued the rights of the issue; but no conveyance under the statute of uses can grant more than the party had at the time, and unless the present deed has the operation of a feoffment, it will not divest the rights of the children.   Be this as it may, the statute of the 4 and 5 Ann. c. 16, 4 Ruff. Stat. 208. 5 Bac. Abr. 443, puts the present matter out of question.   It enacts, § 21, that " all warranties which shall be made by any tenant for life of any lands, tenements or hereditaments, the same descending or coming to any person in remainder or reversion, shall be void and of none effect; and likewise all collateral warranties, which shall be made of any lands, tenements or hereditaments, by any ancestor who has no estate of inheritance in possession in the same, shall be void against the heir." The latter clause applies fully to the principal case. Still, however, notwithstanding this statute, warranty prevails in two cases. 1. The warranty of the ancestor binds the issue in tail with assets. 2. The warranty of the ancestor tenant in tail in possession, still continues to bar those in remainder without assets. Hargr. Co. Lit. 374, *b*. (note 2)   It would be highly inequitable, that Martin Eshelman, the eldest son, should, besides his double share of his father's property, derive an additional 100*l*. from the sale of the lands.

The defendants's counsel insisted, that sanctioning the present suit would only produce circuity of action, since it must be evident, that the defendant in his action against the administrators of David Eshelman, must necessarily in such case obtain a full compensation in damages.   They admitted however, that if the stat., of 4 and 5 *Anne*, c. 16, § 21, was in force in this state, the plaintiff would, in point of law, be entitled to recover.   It is provided, that the common law, and such of the British statutes as have heretofore been extended, shall be in force within this commonwealth, 1 Dall. St. Laws 722. Many British acts of parliament have been extended by practice. 1 Dall. 441.   But we know of no such practice with respect to the act in question.

*Curia advisare vult.*

Shippen, C. J., now delivered the unanimous opinion of the court.   We adhere to the doctrine which we laid down at Nisi Prius, that under the act of 1705, the real estate of a mother is subject to the same rules of distribution as that of a father dy-

ing intestate; and such has been the uniform construction of the act, which is warranted by 2 Vez. 213.

We have each of us made every inquiry in our power, respecting the extension of the English statute of 4 and 5 Anne, c. 16, as to warranties; and not being able to discover a single instance wherein it has been extended, we are of opinion that the lessors of the plaintiff are barred from recovering the lands in question by the collat warranty in this case, real assets having descended from their father David Eshelman to them, to a greater amount than the value of the premises.

Let judgment be entered for the defendant.