GEORGE W. RUSS & others vs. ABRAM M. ALPAUGH.

Norfolk.   January 27, March 25. — Sept. 25, 1875.

*It seems*, that a deed, with full covenants of warranty, by one in possession as tenant by the curtesy, of "all the right, title, interest and estate in and to a certain parcel of land," described, "intending hereby to convey all the title or estate in the premises which was conveyed or passed to the grantor by a deed from " the coheirs of his wife, (and which he had in fact since reconveyed through a third person to her,) warrants the title last mentioned.

If the English doctrine of rebutter by collateral warranty is part of the law of Massachusetts, it is only as restricted by the St. of 4 & 5 Anne, c. 16, § 21.

A deed from a father, with full covenants of warranty, does not bar, estop or rebut his heirs, even to the extent of assets received by descent from him, to assert against the grantee an independent title derived by inheritance from their mother, unless perhaps when administration has been taken out upon his estate and a breach of the covenants occurs after his estate has been settled.

WRIT OF ENTRY by George W. Russ, Caroline E. Newcomb and Susannah S. Young, the heirs at law of Caroline Newcomb, deceased, intestate, to recover a lot of land in Quincy. Plea, *nul disseisin*. The case was submitted to the judgment of the Superior Court, and of this court on appeal, upon the following facts :

In 1845, Jonathan Baxter, being seised and possessed of the demanded premises, together with other lands in Quincy, died intestate, leaving as his heirs at law five children, among them a daughter Caroline, (under whom the demandants claimed,) then married to James Newcomb. A division of his estate was effected by agreement among his heirs, and the demanded premises were included in the portion allotted to and accepted as her share by the daughter Caroline ; and the other four heirs executed a quitclaim deed to James Newcomb, her husband, of all their right, title, interest and estate in the demanded premises, describing them, dated April 23, 1846, and duly acknowledged and recorded, for a nominal consideration of $690.50 ; but in fact James Newcomb paid no consideration whatever for that release, and the real consideration for the same was the execution by said Caroline of several releases, to the other four heirs, of all her right, title, interest and estate in the other lands of which her father had died seised and possessed as aforesaid, which, by the said agreement among his heirs, had been severally allotted to and accepted by them for their shares of his estate.

On August 10, 1857, James Newcomb conveyed the demanded premises by deed of warranty to George Newcomb, who conveyed the same by quitclaim deed of the same date to Caroline, wife of James Newcomb. Each of these deeds was duly acknowledged, and recorded on September 3, 1857, and was expressed to be for pecuniary consideration ; but in fact no consideration was received by James Newcomb for this conveyance of the demanded premises to his wife through George Newcomb.

On January 8, 1858, Caroline Newcomb died, never having made any conveyance of the demanded premises, or of any interest therein, and leaving her husband surviving her, and the demandants, her children and only heirs at law. The demandants, Caroline E. Newcomb and Susannah S. Young, are children of Caroline Newcomb by her said husband, James Newcomb, and the demandant Russ is a child of Caroline Newcomb by a former husband.

On January 20, 1858, James Newcomb, being in possession of the demanded premises as tenant by the curtesy, executed a mortgage, which was duly acknowledged and recorded, (under a foreclosure of which and various mesne conveyances, none of which are in controversy, the tenant claims title,) of other lands by metes and bounds : " And also all the right, title, interest or estate in and to a certain piece or parcel of land lying in Quincy, and bounded," as therein described, (being the demanded premises,) " the same being a part of the homestead estate of Jonathan Baxter, late of Quincy, deceased, as divided and set off by Lemuel Humphrey, Esq., of Weymouth, on Monday, the 20th day of April, 1846, containing four acres, be the same more or less, with all the privileges and appurtenances thereto belonging, intending hereby to convey all the title or estate in the said premises which was conveyed or passed to me, the grantor, by the deed of Jonathan Baxter and others, recorded with Norfolk deeds, lib. 163, fol. 307," (being the quitclaim deed to him from the heirs of Jonathan Baxter above mentioned,) with full covenants of warranty.

On February 15, 1870, James Newcomb, having in the mean time married again, died, leaving a widow surviving him, and as his heirs at law the said Caroline E. Newcomb and Susannah S. Young, daughters by said Caroline Newcomb, and two other chil-

dren by other wives, and leaving assets of equal value at that time with the demanded premises, which descended to his said heirs, subject to the widow's dower.

The case was argued in January, 1875, and reargued in March, 1875.

*L. S. Dabney,* for the demandants.

*J. Q. Adams & B. Adams,* for the tenant.

GRAY, C. J. It was admitted at the argument that the tenant had no defence as against the demandant Russ, he not being an heir of James Newcomb, under whom the tenant claims title. In order to make out the defence against those of the demandants who are Newcomb's heirs, it is necessary to maintain that the covenants in his mortgage deed are not limited to the right, title and interest which he had at the time of its execution, being only a tenancy by the curtesy, but extend to the title in fee which had been conveyed to him by the heirs of Baxter, and which he had since conveyed away before the execution of the mortgage; and also that those covenants, upon the facts of this case, prevent his heirs from asserting the title which had previously descended to them by inheritance from their mother.

The mortgage deed from James Newcomb, not being limited to the right, title and interest which the grantor had at the time of its execution, but expressly declared to be intended to convey all the title or estate in the described premises which was conveyed or passed to him by the deed of Jonathan Baxter and others in 1845, we are inclined to think that the covenants of warranty must be held to be coextensive with the grant and to include the title in fee conveyed to him by the deed referred to. *Allen* v. *Holton,* 20 Pick. 458. *Hubbard* v. *Apthorp,* 3 Cush. 419.

But it is unnecessary to express a decisive opinion upon that point, because we are of opinion that, even upon that construction, there is nothing in the deed of James Newcomb, which can bar, estop or rebut those of the demandants who are his heirs from asserting their title by inheritance from their mother.

If it has any such effect, it must be either, 1st, by the application of the English law of collateral warranty; or 2d, by estoppel; or 3d, by way of rebutter and to avoid circuity of action.

The case is in substance this: When the real estate of the wifes father was divided among his heirs, a conveyance in fee

by the other heirs, of their interest in the land allotted to their sister, was made to her husband; and he afterwards conveyed the land to a third person, who immediately reconveyed it to the wife. She died, and her estate in the land descended to her heirs, subject to her husband's tenancy by the curtesy. He then, having only a life estate, made a conveyance of the land in fee, with full covenants of warranty, under which the tenant claims; and afterwards died, leaving assets of equal value, which descended to four children, two of whom were children by his said wife and are demandants in this action, and the other two were children by other wives, so that the former have taken assets by descent from him equal in value to half of the premises.

1. At common law, a conveyance of land with warranty bound the grantor and his heirs to warrant the title to the lands granted, and, either upon voucher, or upon judgment upon a writ of *warrantia chartæ*, in case of eviction of the grantee, to yield him other lands of equal value. Co. Lit. 365 *a*. The warranty was lineal, when the title asserted by the heir was derived, or might by possibility have been derived, from the warranting ancestor; and collateral, when it neither was nor could have been derived from him. In both lineal and collateral warranty, the heir was bound to yield other lands, in case of eviction, only if and so far as he had other lands by descent from the warrantor. 2 Bl. Com. 301, 302. But the remedy to recover specifically other lands of equal value has never been adopted in this Commonwealth. *Marston* v. *Hobbs*, 2 Mass. 433, 438.

A lineal warranty estopped the heir to assert title to the lands warranted, although he took no other lands by descent; for to allow him to recover the lands warranted would allow him to take those lands by descent, contrary to his ancestor's warranty; and the common law (by a rule, the justice of which is not apparent) held him equally barred and estopped in the case of a collateral warranty, upon the mere presumption that he might hereafter take assets by descent from or through the same ancestor. 2 Bl. Com. 302.

The St. of Gloucester, 6 Edw. I. (1278) *c*. 3, remedied this injustice in one class of collateral warranties, by providing that the warranty of the father should not bar the son, who was the heir of both parents, from claiming the land in the right of his

mother, except so far as assets descended to him from his father. 2 Inst. 292   *Sym's case*, 8 Co. 51 *a*, 52 *b*.   4 Dane Ab. 494.

The St. *De Donis*, 13 Edw. I. (1285) Westm. 2d, *c.* 1, which created estates tail, provided that the tenant in tail should have no power to aliene the estate.   Under this statute, it was held, by analogy to, or, as Lord Coke says, " by the equity of " the St. of Gloucester, that a warranty by the tenant in tail barred the heir when he inherited other assets of equal value from the warrantor, but not otherwise.   Co. Lit. 373 *b*, & Butler's note 328.   2 Inst. 293.   But it was also held that, as the object and effect of the St. *De Donis* were merely to protect heirs in tail, therefore, as against the remainderman or reversioner, the warranty of the tenant in tail, being a collateral warranty, not of the class defined in the statute of Gloucester, was a bar, even without proof of other assets.   Co. Lit. 373 *a*, 374 *b*, 375 *a*.   Vin. Ab. Voucher U. b. 3, pl. 25.

By the St. of 4 & 5 Anne (1705) *c.* 16, § 21, all warranties by any tenant for life were declared to be void as against those in remainder or. reversion ; and all collateral warranties of an ancestor, who had no estate of inheritance in possession, to be void as against the heir.   Under this statute, a collateral warranty by a tenant by the curtesy was void against his heir, because such tenant had no estate of inheritance in possession ; but a warranty by a tenant in tail has been considered in England to be unaffected by this statute, and, as before, to bar the estate tail and all remainders and reversions expectant thereon.   2 Bl. Com. 303.

Eminent judges in England and America have vied with each other in denouncing the English doctrine of collateral warranties. Lord Cowper spoke of a collateral warranty " as certainly one of the harshest and most cruel points of the common law."   *Bath* v. *Sherwin*, 10 Mod. 1, 3.   And Mr. Justice Story said : "' The doctrine of collateral warranties is one of the most unjust and oppressive and indefensible in the whole range of the common law, and in a country like ours would daily work the greatest public mischiefs."   *Sisson* v. *Seabury*, 1 Sumner, 235, 262.   It has not been generally adopted in the United States.   4 Kent Com. (12th ed.) 469, & note *f.*   And we are not aware that it has ever been adjudged to be the law of Massachusetts, or been

" adopted, used and approved in the Province, Colony or State of Massachusetts Bay, and usually practised on in the courts of law," so as to be continued in force by the Constitution of the Commonwealth, c. 6, art. 6.

If the founders of Massachusetts can be deemed to have brought with them the doctrine of rebutter by collateral warranty, as applicable to their condition in this country, the St. of Gloucester, which had become part of the law of England centuries before, must certainly be deemed part of our common law. *Commonwealth* v. *Knowlton*, 2 Mass. 530, 534. *Tyler* v. *Sturdy*, 108 Mass. 196. 4 Dane Ab. 321, 494.

The St. of 4 & 5 Anne, c. 16, § 21, having been passed since the settlement of Massachusetts, stands upon somewhat different grounds. Mr. Dane, though with some doubt, seems to incline to the opinion that it had been adopted here. 4 Dane Ab. 320, 321, 494. The statute was passed many years before our Revolution, and is declared in its title to be for the amendment of the law of England and the better advancement of justice. Several other provisions of it have certainly been adopted in Massachusetts; as, for instance, § 1, concerning special demurrers; *Keay* v. *Goodwin*, 16 Mass. 1, 3; *Parker* v. *Parker*, 17 Pick. 236, 241; § 9, concerning grants of reversions without attornment of tenants; *Farley* v. *Thompson*, 15 Mass. 18; *Burden* v. *Thayer*, 3 Met. 76, 78; and § 27, concerning actions of account; *Jones* v. *Harraden*, 9 Mass. 540, note. We are therefore of opinion that, in the absence of any evidence to the contrary, § 21, being a most just and equitable amendment of the severe rule of the common law, which, in all cases not within the St. of Gloucester, bound heirs by collateral warranty, with or without assets, must, if that rule ever became part of our law, be deemed to have been also adopted here. *Commonwealth* v. *Leach*, 1 Mass. 59, 61. *Farley* v. *Thompson* and *Burden* v. *Thayer*, *ubi supra*. *Sisson* v. *Seabury*, 1 Sumner, 235, 261.

In *Bates* v. *Norcross*, 17 Pick. 14, the questions whether the doctrine of rebutter by collateral warranty was the law of this state, and whether, if it was, the St. of Anne was in force here, were argued, but not decided. But a case of the time of the Province has been since published, which throws some light upon the subject.

In *Banister* v. *Henderson*, Quincy, 119, argued before the Superior Court of Judicature in 1765, James Otis, in supporting the point that a collateral warranty by a tenant in tail barred a remainderman, argued that ".collateral warranty is a bar without assets, notwithstanding the statute of Anne," because, 1st, it was a bar in England in a like case before the statute, citing Coke and Viner; 2d, "the ancestor making this collateral warranty had an estate of inheritance in possession, and therefore does not come within the statute;" 3d, he "denied the statute to extend here." pp. 139, 140. Jeremiah Gridley, of counsel for the demandant, upon the first suggestion of the effect of conveyances with warranty, exclaimed, "Abolished long ago by act of parliament." p. 128. "Afterwards," as the reporter adds at the close of the arguments, "Mr. Gridley spoke to this point of collateral warranty, and, as I heard, so conclusively, that the counsel for the tenants waived the matter." p. 145. As it can hardly be supposed that any doubt could have been raised as to the law of England on the subject before the St. of Anne, that case strongly tends to show that, according to the deliberate opinion of those great lawyers, either the common law of England as to collateral warranty was not in force here, or the St. of Anne was in force here and governed the case.

The decision in *Eshelman* v. *Hoke*, 2 Yeates, 509; *S. C.* 4 Dall. 168; in which § 21 of the St. of Anne was held not to be in force in Pennsylvania, is supported by no satisfactory reasons, and, although it settled the law in that state, has hardly been approved there. *Jourdan* v. *Jourdan*, 9 S. & R. 268, 275. The cases of *Todd* v. *Todd*, 18 B. Mon. 144, and *Lane* v. *Berry*, 2 Duvall, 282, are based upon a statute of Kentucky, and are therefore inapplicable.

The result on this branch of the case is, that if the English doctrine of rebutter by collateral warranty is any part of the law of this Commonwealth, (which we have no occasion now to decide,) it is only as restricted by the St. of Anne; and that the deed of James Newcomb, he having at the time of its execution only an estate by the curtesy, and no estate of inheritance in possession, did not operate by way of collateral warranty to bar his heirs, even to the extent of the assets which they took by descent from him.

2. By our law, it is well settled that a deed with full covenants of warranty estops the grantor to set up any title subsequently acquired by him against the grantee, and that the subsequently acquired title enures by virtue of the estoppel to the grantee, at least at the election of the latter. *Somes* v. *Skinner*, 3 Pick. 52. *Blanchard* v. *Ellis*, 1 Gray, 195. *Carver* v. *Jackson*, 4 Pet. 1 85–87. *Irvine* v. *Irvine*, 9 Wall. 617. The deed works by way of estoppel as well as by way of contract, and therefore has effect as an estoppel, without regard to the grantor's liability to a personal action on the covenants, and even if he has obtained a discharge in bankruptcy before acquiring the subsequent title. *Gibbs* v. *Thayer*, 6 Cush. 30. *Bush* v. *Cooper*, 18 How. 82. Any one claiming title by inheritance from the grantor after he has acquired the subsequent title is of course equally bound by the estoppel. *Carver* v. *Jackson, ubi supra*. *French* v. *Spencer*, 21 How. 228. *White* v. *Patten*, 24 Pick. 324. *Perry* v. *Kline*, 12 Cush. 118. *Wark* v. *Willard*, 13 N. H. 389. And a release with covenants of warranty by an heir apparent, of his estate in expectancy, will bar his claim by descent on the death of his ancestor. *Trull* v. *Eastman*, 3 Met. 121. *Curtis* v. *Curtis*, 40 Maine, 24.

But we are not aware of any case in which it has been adjudged that an heir, claiming an independent title in himself, is estopped to assert it by the mere force of the covenants of his ancestor. And whatever may be the true foundation or reason of the rule, it cannot be allowed such an effect.

If it rests upon the common law doctrine of estoppel, " an estoppel on the part of the mother shall not bind the heir when he claimeth from the father; " Co. Lit. 365 *b;* and of course, *e converso*, the estoppel of the father cannot bind the heir claiming an independent title from the mother.

If, as is implied in *Somes* v. *Skinner*, 3 Pick. 59, and *White* v. *Patten*, 24 Pick. 327, it rests on the rule of law, declared in *Weale* v. *Lower*, Pollexf. 54, 66, that if a conveyance is made by fine, of an estate which is contingent when the fine is levied and afterwards becomes absolute, " the estate which cometh to the heir upon the happening of the contingency feeds this estoppel, and then the estate by estoppel becometh an estate in interest, and shall be of the same effect as if the contingency had happened

before the fine levied," that rule does not extend to an heir claiming under an independent title. " If the father is tenant for life, remainder to the son in fee, and he levies a fine, that shall not bind the son as privy for his reversion; or if the father levies a fine of the lands of the mother, the son is not bound ; " and so he is not bound as heir, if he claims the land by descent from another ancestor, although he must name the person by whom the fine was levied, by way of pedigree and not of title. *Edwards* v. *Rogers*, W. Jones, 456, 460 ; *S. C.* March, 94. 2 Prest. Abstr. Tit. 215, 216.

So far as it is governed by the law of common recoveries, as is implied in *Somes* v. *Skinner*, 3 Pick. 58, 59, the effect of a common recovery depended upon the fact that the party, who by reason thereof lost his estate, was recompensed by a recovery in value under the voucher to warranty. Rawle on Cov. (4th ed.) 9, 414. And the recovery bound no one, even by way of estoppel, who was not a party to it, but claimed under an independent title, as appears by the very case cited in 3 Pick. 58, 59, from Rolle's Abridgment, and by *Say & Seal's case*, 10 Mod. 40, 45.

So far as it rests, as stated by Mr. Justice Wilde in *Comstock* v. *Smith*, 13 Pick. 116, 119, and by Mr. Justice Nelson in delivering the opinion of the Supreme Court of the United States in *Van Renssellaer* v. *Kearney*, 11 How. 297, 322–326, upon the ground that a person shall not be permitted to allege a fact to be different from what he has expressly asserted it to be in his own deed, there is no reason for extending it to any one claiming under a title independent of the grantor and existing in another person before the title accrued from the grantor.

To allow the doctrine of estoppel such operation would be to deprive a rightful owner of his estate, without any act or covenant of his own, merely by reason of his happening to become heir to one who, having no title, had undertaken to assert one ; and, as this doctrine depends upon the terms of the deed and the relation of the heir to the grantor and to the estate granted, wholly independently of the question whether he has or has not inherited other assets from him, would bind him even if he took no such assets, and thus introduce into our jurisprudence the most odious and unjust rules of the English law of collateral warranty.

The general statement of Chief Justice Shaw, in delivering the opinion in *Cole* v. *Raymond*, 9 Gray, 217, 218, that when one granting lands in fee, with covenants of warranty binding himself and his heirs, has no title to the estate, " yet if he or they after wards acquire a good title, it forthwith enures to the benefit of the grantee, to the same extent as if the grantor and warrantor had had the same good title at the date of the grant and warranty, to operate by way of estoppel, if the action be brought in such form that it may be pleaded by way of estoppel ; otherwise, by way of rebuttal to the claim of any one bound by such warranty," must be construed to intend, so far as the effect upon the heirs is concerned, the case in which they subsequently acquire a good title in the right of the grantor, for two reasons : 1st, as the heir in that case took no assets by descent from his father, the grantor, and claimed an independent title from his mother, to hold him bound by the warranty would directly contravene the St. of Gloucester; 2d, if the heir had been held bound by the mere force of the grant and covenant of his ancestor, it would have disposed of the case ; whereas the court expressly waived the decision of that question, and held the son and his grantee to be estopped by the deed, solely upon the ground that as executor and residuary devisee of his father he had given bond to pay all his father's debts and legacies, and thereby expressly taken upon himself the obligation of his father's warranty.

It follows that the demandants, not claiming title under their father, nor having assumed by their own act the obligation of his covenants, are not estopped by his deed to assert in this action their title by inheritance from their mother.

3. By the law of England, the grantor was liable to an action on his express covenants, at least when his liability on the warranty was not an adequate remedy. 30 & 31 Edw. I. 255, 257. Rawle on Cov. 206–210, & notes. And the heir was liable to a personal action on the covenants of his ancestor so far, though so far only, as assets descended from the one to the other. *Buckley* v. *Nightingale*, 1 Stra. 665. *Brook* v. *Bulkeley*, 2 Ves. Sen. 498, 499. 2 Bl. Com. 243.

By the law of this Commonwealth, the lands, as well as the personal property, of a deceased person are liable for his debts, and the remedy of the creditors must ordinarily be sought by

action against his executor or administrator, and sale of the rea.
estate, if necessary, under license of court ; and the heirs are not
liable to a personal action upon his covenants, even if they have
received assets unless administration has been taken out and a
breach occurs after the estate has been settled. *Royce* v. *Burrell,*
12 Mass. 395. *Hall* v. *Bumstead,* 20 Pick. 2.

In *Bates* v. *Norcross,* 17 Pick. 14, the tenant claimed title to
the demanded premises under a deed with general covenants of
warranty from a father, whose only daughter and heir at law had
received by descent from him assets in real estate to a greater
value than the land demanded, and after his death intermarried
with the demandant, who now claimed the land under a para-
mount title. The only questions reserved were : 1st, whether the
demandant, being in the right of his wife privy in estate with
the grantor, was estopped to set up a title paramount against
the tenant, in opposition to the grant and covenant ; and 2d,
whether, as the tenant, if the demandant were to recover in this
action, would have his remedy by action of covenant on the war-
ranty against the demandant and his wife, such warranty operated
by way of rebutter to defeat and bar this action. The court,
observing that the doctrine of collateral warranty was not appli-
cable, held that the case was one of lineal warranty, so far as
the daughter of the grantor was concerned, and that, her hus-
band being jointly liable with her to action, judgment and exe-
cution on the covenant, the doctrine of rebutter applied, to avoid
circuity of action. It must be assumed that the estate of the
grantor, who, it appears by the report, had died ten years be-
fore the trial, had been settled in due course of administration ;
for it is not to be supposed that the court intended to overrule
the case of *Royce* v. *Burrell,* 12 Mass. 395, or to take a different
view of the law from that which the same judges, who decided
*Bates* v. *Norcross,* affirmed within a year afterwards in *Hall* v.
*Bumstead,* 20 Pick. 2.

In the case at bar, as it does not appear that administration
has been taken out on the estate of James Newcomb, his heirs
are not and have never been liable to a personal action on his
covenants, and therefore those covenants cannot be set up against
them by way of rebutter and to avoid circuity of action.

*Judgment for the demandants.*