| 104 | 575 |
| 128 | 498 |

# Carson and McFadden *versus* The New Bellevue Cemetery Company.

1. Although the Statute of Gloucester, 6 Edw. 1, is in force in Pennsylvania, the Statute of 4 & 5 Anne c. 16, § 21, is not, and therefore a warranty by a tenant by the curtesy, is a bar to the heir, taking, by descent from his warranting ancestor, assets of equal value to the land warranted.

2. While in the United States personal covenants of warranty in deeds, enforceable only in covenant and sounding in damages, have superseded the warranty of the common law; yet such covenants, in analogy to the ancient rule respecting warranties under similar circumstances, preclude the heirs of the grantor, who hold assets equal in value by reason of inheritance from the warranting ancestor, from claiming the land.

3. A., a tenant by the curtesy, conveyed lands to B., the deed purporting to convey the fee, and containing the usual covenants of general warranty. Afterwards, A. executed an agreement to C. and D., who were entitled to the fee of the aliened premises as heirs of his deceased wife. in which, after reciting a deed of release, without consideration, by C. and D., for certain other lands, to which they were entitled as heirs of their mother, A. covenanted that in consideration of the premises, he would not by "deed, mortgage, sale, judgment, devise or otherwise prejudice or interfere" with the rights of C. and D., as "his heirs at law" of their free and equal share of his real estate, "but that the same should remain free and uncontrolled to be divided among all his legal heirs, including the said" C. and D. Subsequently A. made a will by which he directed his real estate to be divided equally among his heirs. At A.'s death, C. and D., who, as his heirs, took assets to a greater value than the land conveyed to B., brought ejectment against B. for said land. *Held,*

(1) That, although a consideration was expressed therein, the agreement was a covenant by A. to stand seised to the use of his heirs, based upon natural love and affection, in view of which his will was of no effect.

(2) That at A.'s death his heirs took his realty as heirs, according to the terms of the agreement, and that the lands thus taken must be regarded as assets, in the hands of said heirs, derived from their warranting ancestor by inheritance; and, therefore, that said agreement did not prevent C. and D. from being estopped to deny the covenant of warranty made by A. in his deed to B.

November 8th 1883.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN, J., absent.

ERROR to the Court of Common Pleas No. 1, of *Allegheny county:* Of October Term 1883, No. 225.

Ejectment, by John Carson and William McFadden against The New Bellevue Cemetery Company, for a tract of land known as "out-lot No. 200, in the Reserve Tract opposite Pittsburgh," in Allegheny county.

The facts, about which there was no dispute, were fully set out in the formal bill of exceptions, sealed by the court, which was as follows:

At the trial of this case the following facts were admitted:

[Carson *v.* New Bellevue Cemetery Co.]

I. That the land in dispute is part of out-lot No. 200 in the Reserve Tract opposite Pittsburgh, in the county of Allegheny, which was conveyed to Nancy Bennett in fee simple, by deed of Wm. Carson, dated May 21st 1820, and duly recorded June 13th 1820, vol. 27, p. 404.

II. That afterwards, the said Nancy Bennett intermarried with said Wm. Carson and died intestate, leaving her surviving the said Wm. Carson and the following issue, her heirs at law, viz:

(1) A son, Samuel Bennett, and a grandson, Wm. B. Bennett, both strangers in blood to the said Wm. Carson.

(2) Another son, John Carson, and a daughter, Nancy, intermarried with John R. McFadden.

III. That said John R. McFadden and Nancy, his wife, departed this life before the commencement of this suit, the said Nancy intestate, leaving an only son, her sole heir-at-law, to wit: Wm. McFadden, who with the said John Carson is plaintiff in this suit.

IV. That after the decease of said Nancy, wife of Wm. Carson, and in the lifetime of said Nancy McFadden, the above named Samuel and Wm. B. Bennett, with their wives, and with Mary, the wife of Wm. B. Bennett's father, by deed dated February 8th 1858, bargained and sold their right, title and interest in the land in dispute to Hugh S. Fleming, Esq., his heirs and assigns; and that said Fleming with his wife conveyed the said right, title and interest for a valuable consideration unto the said John Carson and Nancy McFadden, their heirs and assigns, August 4th 1862.

V. That said ancestors and predecessors in title of the said plaintiffs, neither did nor suffered any act or thing impeaching or affecting their title to said land, and the same descended unto and became vested in said plaintiffs in the manner above set forth.

VI. That in 1854, the said Wm. Carson, then seised of the land in dispute as tenant by the curtesy after the death of his said wife, executed and delivered to Harvey Bollman, a deed, which, in consideration of the sum of two hundred dollars ($200), purported to convey the said land in fee simple, and embodied the usual covenant of general warranty, with the words in the granting clause: grant, bargain, sell; and that the defendant is and was, at the time this suit was brought, in possession under the title so made, and showed no other assurance of title than the said deed and the mesne conveyances from said Bollman to defendant; which deed was duly recorded.

VII. That the said Wm. Carson afterwards executed and delivered to the above named John Carson and Nancy Mc-

Fadden a deed or instrument of writing in the words and figures following, viz., and which is duly recorded 29th Sept. 1862 ; vol. 158, p. 38 :

WHEREAS, John Carson and wife, and John R. McFadden and Nancy, his wife, have this day executed to James Old, of McClure township, Allegheny county, a release of all the right, title, interest and claim of them, of, in and to a certain tract of land in the said reserved tract opposite Pittsburgh, in the county of Allegheny, being part of out-lots Nos. 217 and 218, in said reserved tract, and containing two acres and seventy-one and nine one-hundredths perches, the title of which was in them through their mother Nancy, late Nancy Bennett, without consideration whatsoever, from me and for my benefit.

THEREFORE, KNOW ALL MEN BY THESE PRESENTS, That I, William Carson, in consideration thereof, hereby covenant and agree to and with the said John Carson and Nancy McFadden, that I shall not, nor will I by deed, mortgage, sale, judgment, devise or otherwise, prejudice or interfere with the rights of the said John Carson and Nancy McFadden, as my heirs-at law, as to their free and equal share in all my real estate, but the same shall remain free and uncontrolled, to be divided equally amongst all my legal heirs, including the said John and Nancy, at my decease.

Witness my hand and seal this 5th day of August, A. D. 1862.
Witnesses :                          WILLIAM CARSON. [L. S.]
    S. B. GILL.
    JOHN DYER.

VIII. That at and before the sealing and delivering of said writing, said William Carson was seised in fee of other real estate exceeding in value the land in dispute, and died seised of said other real estate in the year 1871, leaving issue the said John Carson and Nancy McFadden, Wm. H. Carson, a son by a marriage subsequent to that with the above named Nancy Bennett, and Carson W. Taylor, the son of a deceased daughter by said subsequent marriage.

IX. That said William Carson left a last will and testament, according to the terms of which all his real estate was to be divided equally between the said John Carson, John R. Mc-Fadden, and the said Wm. H. Carson.

X. It is admitted that plaintiffs (the said McFadden as representing the said Nancy McFadden, deceased), were seised at the commencement of this suit, and are still seised of shares of the said real estate, late of said William Carson, which exceed in value the interests they claim in the locus in quo.

The defendants claimed that the plaintiffs were, by the warranty of William Carson, estopped from asserting their title, inasmuch as they had (as alleged) as heirs of the said William

Carson, assets to a greater amount than the value of the locus in quo. The plaintiffs, on the other hand, claimed that they took nothing as heirs of William Carson, but that they acquired their interest in his real estate under the agreement of August 5th 1862.

The defendants submitted the following points:

1. That under all the evidence the plaintiffs are not entitled to recover. Affirmed. (First assignment of error.)

2. That under all the evidence plaintiffs were estopped. Affirmed. (Second assignment of error.)

Verdict and judgment for the defendants, whereupon the plaintiffs took this writ, assigning for error the answers to the defendants' points, and the refusal of the court to enter judgment for the plaintiffs.

*W. Macrum* (with whom was *T. M. McFarland*), for the plaintiffs in error.—The estoppel set up by defendants can only be made out by showing affirmatively: (1) That plaintiffs have assets derived from the warrantor of defendant's title, and equal in value to the land in suit. (2.) That such assets were derived by plaintiffs from said warrantor as his heirs or devisees.

We may admit the first allegation, but we deny the second. For a valuable consideration moving to him from these plaintiffs who afterwards (i. e., at his death), became his heirs at law, the said warrantor covenanted with them, in effect, to stand seised of all his real estate to the use of his heirs apparent, in fee simple, reserving to himself a life estate therein. It is admitted by the statement of facts that the covenantor acquired no new realty after making this assurance.

The plaintiffs have nothing by descent or devise from William Carson : Taylor *v.* Mitchell, 6 Norris 518. The statute of Gloucester, 6 Ed. 1, c. 3 (Robert's Dig. 208), provided that the heir should not be barred by warranty of tenant by the curtesy, except "for the value of the heritage that is to him descended of his fathers' (the warrantor's) side." A party is not estopped by a deed (or other assurance such as this pretended descent or devise from William Carson), under which he does not claim : Bigelow Estoppel 243, 251, 247 ; Chauvin *v.* Wagner, 18 Mo. 531 ; Jourdan *v.* Jourdan, 9 S. & R. 268 ; Edwards *v.* Rogers, Sir W. Jones 460.

*Charles C. Dickey* (with whom were *George Shiras, Jr.* and *Welty McCullogh*), for defendants in error.—Independently of the agreement of August 5th 1862, the title of the plaintiffs was rebutted by the warranty of their ancestor, William Carson : Eschelman *v.* Hoke, 2 Yeates 509 : Bates *v.* Norcross, 17 Pick. 14 ; Cole *v.* Raymond, 9 Gray 217 ; Russ *v.* Perry, 49 N. H.

547; Paxson v. Lefferts, 3 Rawle 67. The agreement did not relieve the plaintiffs from the effect of said warranty. This is evident from the words of the instrument itself, whereby William Carson covenanted that he would do nothing to prejudice the rights of the appellants " as his heirs at law."

Mr. Justice CLARK delivered the opinion of the court, January 7th 1884.

This ejectment was brought to recover the possession of a part of out-lot No. 200, in the reserve tract, opposite the city of Pittsburgh, in the county of Allegheny. The facts from which the controversy arises are admitted on both sides, and are fully set forth in the formal bill of exceptions, sealed in the court below.

At the time of the execution of the deed to Harvey Bollman, in the year 1854, Carson, the grantor, held in the lands in dispute an estate for life only as tenant by the curtesy; the fee was vested in the heirs at law of Nancy Carson, the deceased wife of the grantor. The deed, however, purported to convey in fee simple, and contained express covenants of general warranty of title in the usual form. Subsequently, John Carson and his sister Nancy, who was intermarried with John R. McFadden, two of the said heirs, became the owners in common of the fee, subject to the curtesy, one half part thereof by descent, and the other half by purchase of the remaining heirs, through the deed of Hugh S. Fleming. John R. and Nancy McFadden, having died, left surviving them one son, William McFadden. This suit was brought by the said John Carson and William McFadden, who claimed the fee, after the death of the tenant by curtesy, to recover the possession as against the defendants, who hold under the title of Harvey Bollman. It is admitted that the plaintiffs, at the institution of the suit, were and still are seised of shares in the real estate late of William Carson, which exceed in value the interests they claim in the locus in quo.

Under this state of facts, it is contended on the part of the defendant, that the plaintiffs are by the warranty of William Carson estopped or barred from asserting their title ; that as far as they have assets in fee simple as heirs, they are barred, by force of the warranty of their ancestor, operating as a rebutter. The general rule of law thus invoked is doubtless a very ancient one ; it was one of the operating principles of the common law warranty, which filled so important a place in the English law of real property. The reason for the application and enforcement of such a rule at the common law was not more apparent, however, than under our present system, and under some modifications the same rule obtains in this country

At the common law, every warranty, whether lineal or collateral, which descended to the heir of the warrantor, was a bar against the heir to demand any lands or tenements against the warranty. The warranty of tenant by the curtesy is collateral, as the heir at law upon whom it descends cannot claim the land as the heir of the warranting ancestor, but as the heir of the warrantor's wife, in whom was the fee. The injustice of barring the heir from claiming the land by a collateral title, when no assets descended, gave rise to the statute of Gloucester, 6 Edward I., which remedied this wrong, in the case of tenant by the curtesy. By this statute it was provided, that if a tenant by the curtesy alien, with warranty, and die, the heir was not thereby barred, unless he had assets, in fee simple, by descent, by the tenant of the curtesy ; and if lands or tenements thus descended to the heir, he was barred, having regard to the value thereof : Coke Litt. 365, 380. This bar was, and still is, technically known as a rebutter, and is in the nature of an estoppel. By the statute 4 and 5 Anne, c. 16, § 21, it was provided that " All warranties made by any tenant for life of any lands, tenements or hereditaments, the same descending or coming to any person in remainder or reversion, shall be void and of no effect; and likewise all collateral warranties which shall be made of any lands, tenements or hereditaments by any ancestor, who has no estate of inheritance in possession, in the same, shall be void against the heir." But whilst the statute of Gloucester was extended to Pennsylvania, 3 Binney 602, the statute of Anne was not, and it was distinctly decided in Kesselman's Lessee *v.* Old, 4 Dallas 168, and in Eshelman *v.* Hoke, 2 Yeates 509, that a warranty by tenant by the curtesy, with assets, was a bar to the heir, the statute of Anne not being in force in this state. It is true that a warranty could not, at the common law, descend on any other than the common law heir and the same rule was held to apply to lands held in borough English, and under the custom of gavelkind, Litt. §§ 735, 736 ; and yet the customary heir, says Lord COKE, although not liable directly upon the warranty, was held so by reason of the inheritance : Coke Litt. 376 a. This qualification, as suggested in a note to the case of Paxon *v.* Lefferts, 3 Rawle 59, was perhaps not drawn to the attention of the court in Jourdan *v.* Jourdan, 9 S. & R. 268, where the general rule only is stated.

As the result of legislation, from time to time, warranty in its original form in England has long ago been abandoned, the whole system having been abolished by the statute 3 and 4 William IV. cc. 27 and 74 ; whilst the remedy by ancient warranty may be said never to have had any general practical existence in the United States. Personal covenants have superseded the warranty of the common law. In the discussion

of the effect of these personal covenants, however, it is in some cases necessary to recur to the rules and operation of the ancient warranty; which, although "obsolete as the curious learning respecting it unquestionably is," affords the most valuable aid in determining the rights and responsibilities which result under present forms. We are of opinion, that whilst the usual covenants of warranty now in use, and which have superseded the warranty of the common law, are only enforceable in covenant, and sound in damages for the injury done, yet such a covenant not only defends the covenantee, his heirs and assigns against the consequences of an eviction, in the manner stated, but in analogy to the operation of the ancient rule, when applied under similar circumstances, precludes the grantor and his heirs in general, holding assets equal in value, by reason of the inheritance, from claiming the land. "The covenant of warranty," says Mr. Justice STORY, in Stoddard *v.* Gibbs, 1 Sumner 263, "is in this country deemed a personal covenant, and may not authorize a recovery over of the value from the heir, if he has assets, in a warrantia chartæ, but only in an action of covenant; yet that does not prevent the covenant of warranty from operating as a bar to the title of the heir by way of rebutter, when it descends upon him from the warranting ancestor." The purpose of the rule is to avoid circuity of action, and that reason is as apparent now under our practice, as at any time heretofore. We may upon this branch of the case refer also to Bates *v.* Norcross, 17 Pick. 14; Flynn *v.* Williams, 1 Ired. (N. C.) 509; 4 Kent Com. 471; Cole *v.* Raymond, 9 Gray 217.

"The effect of a covenant of warranty, by way of rebutter," says Washburne in his treatise on the Law of Real Property, Vol. 3, page 480, "is illustrated in the case of Bates *v.* Norcross, already cited, in which the doctrine of lineal warranty, borrowed from the common law, is applied; although as a general proposition the ancient doctrine of lineal as well as collateral warranty is exploded in this country. The ground of the decision in such a case is, that by holding the covenant of an ancestor, from whom assets have descended to his heir, to be a rebutter to the claim of the heir to the land, which the ancestor has wrongfully conveyed with warranty, a circuity of action is avoided; since the moment the demandant were to recover the land, the tenant would acquire the right to recover the value thereof from the heir, in an action upon the ancestor's covenant of warranty."

But it is unquestionably true that the heir, in such a case as this, cannot be barred unless he has assets, in equal value, descended from the warranting ancestor; and here the defend-

ants interpose the agreement of the 5th August 1862, which is in the following form :

. "Whereas, John Carson and wife, and John R. McFadden and Nancy his wife, have this day executed to James Old, of McClure township, Allegheny county, a release of all the right, title, interest and claim of them, of, in and to a certain tract of land in the said reserved tract, opposite Pittsburgh, in the county of Allegheny, being part of out-lots Nos. 217 and 218 in said reserved tract, and containing two acres and seventy-one and nine one-hundredths perches, the title of which was in them through their mother Nancy, late Nancy Bennett, without consideration whatsoever from me, and for my benefit.

"Therefore, know all men by these presents, that I, William Carson, in consideration thereof, hereby covenant and agree to and with the said John Carson and Nancy McFadden, that I shall not, nor will I by deed, mortgage, sale, judgment, devise or otherwise, prejudice or interfere with the rights of the said John Carson and Nancy McFadden, as my heirs at law, as to their free and equal share in all my real estate, but the same shall remain free and uncontrolled, to be divided amongst all my legal heirs including the said John and Nancy, at my decease.

"Witness my hand and seal this 5th day of August 1862.
"Witness :                                    WILLIAM CARSON.  [L. S.]
     S. B. GILL.
     JOHN DYER."

This agreement, under the ruling of Taylor *v.* Mitchell, 6 Norris 520, must be taken and construed as an instrument, in the nature of a covenant to stand seised to the use of the covenantor's heirs. At the execution of the writing, Carson had no heirs ; no one is heir of the living, and until the time of his death his heirs could not be ascertained. The use was therefore contingent, and the seisin of the estate rested in William Carson during life. At his death, however, his heirs were determinable under the intestate laws. His last will and testament, which was probated after his death, was of no effect, as he had covenanted not to make a will, and those who were his heirs under the law took his realty as heirs according to the covenant. The express terms of the covenant are, that his real estate should be divided among his "legal heirs," and that he would in no way interfere with or divert the same from passing to them, by descent. It was their rights as heirs they sought to protect. Alienation was what was expressly provided, against ; and although a consideration was expressed, the instrument was only sustainable as a covenant to stand seised upon the consideration of love and natural affection. The instrument cannot therefore be regarded as an alienation, such as to

[Pittsburgh, &c. R. R. Co. *v.* Commonwealth.]

withdraw the descended estate from the claim of the ancestor's creditors. The lands thus acquired must therefore be regarded as assets in their hands, from the warranting ancestor. Upon the grounds herein expressed, therefore, the judgment is affirmed.