## FAIRCHILD ET AL. v. DUNBAR FURNACE CO.
## DUNBAR FURNACE CO. v. FAIRCHILD ET AL.

### ERROR TO THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

Argued May 16, 1889—Decided October 7, 1889.

[To be reported.]

1. A written contract, though not under seal, by which, in consideration of a sum certain, A agrees to convey to B the right and privilege of digging all the ore on A's land, is in equity, after payment of the consideration, the equivalent of a conveyance of the title to the ore in fee.

2. An amendment to a declaration is not permissible, unless it plainly appear to be but a mere specification of a claim already counted upon; and especially will it not be allowed when it would introduce a new cause of action which is so old as to be barred by the statute of limitations.

3. An action for double or treble damages for cutting timber, under § 3, act of March 29, 1824, 8 Sm. L. 283, is an action for the statutory penalty, not for a redress of the injury committed, and the cause of action, although arising from the same subject matter, is different from that accruing at common law.

4. Where a plaintiff brought suit in 1881, declaring for a common law trespass q. c. f., he may not upon an amended narr declaring under the statute and filed in 1888, against the objection of the defendant, recover in the same action for the double or treble damages given by the act of 1824.

(*a*) F, being tenant by the curtesy of a tract of land of which his children were seised in remainder as heirs of their mother, agreed in writing, without warranty of title, to convey timber rights in said land and to procure any further assurances requisite to vest title, in consideration of the conveyance to him of 100 acres of other land.

(*b*) F took possession of the 100 acre tract and his vendee entered upon the land conveyed to him to remove timber. On F's death, his children claimed and used the 100 acre tract as his heirs, and two of them conveyed their interest therein, describing the land as being the same which their father had acquired in exchange for the timber rights sold by him.

5. The foregoing facts neither raised any question of collateral warranty, nor presented any ground for an estoppel barring F's children from maintaining an action, against one claiming under the contract of sale made by F, to recover damages for the removal of timber after his death from the land inherited by them from their mother.

6. The timber right granted by F being consistent with the possession of the land by the grantor, the fact that the cutting of timber after his death was simply in continuation of that done in his lifetime, would not prevent an action of trespass from being maintained therefor by the remaindermen.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

Nos. 445 January Term 1889 and 20 July Term 1889, Sup. Ct. ; court below, No. 168 September Term 1881, C. P.

On August 25, 1881, John W. Fairchild, W. W. Fairchild, J. A. Fairchild and others brought trespass q. c. f. against the Dunbar Furnace Company to recover damages for mining and carrying away iron ore and felling and carrying away timber from a certain tract of land belonging to the plaintiffs. Issue.

The case was tried December 13, 1886, when the plaintiffs recovered a verdict for single damages and interest, amounting to $2,320.70, which sum on motion was trebled by the court and judgment entered for $6,962.10. Upon writ of error to No. 50 January Term 1888, Sup. Ct., this judgment was reversed, and a new venire awarded, the case being reported in 121 Pa. 563. In reversing the judgment, the Supreme Court held, inter alia, that the plaintiffs' declaration was not in such form as to sustain an award of treble damages under § 3, act of March 29, 1824, 8 Sm. L. 283. The record having been remitted to the court below, the plaintiffs on December 18, 1888, asked leave to file an amended narr, charging that on the first Monday of September, 1881, the defendant broke and entered a certain close of the plaintiffs, and mined and carried away therefrom iron ore and other minerals of the plaintiffs, and felled and carried away timber trees thereon standing and growing, with counts declaring for treble damages for the iron ore and timber trees, so taken and converted by the defendant " contrary to the form of the act of assembly in such case made and provided." The defendant objected, but the court overruled the objection and permitted the amended declaration to be filed; exception.ᵍ To the amended narr, the defendant then pleaded, not guilty, and the statute of limitations.

At the trial on February 20, 1889, the following facts were shown:

Statement of Facts.

On April 1, 1854, John Martin, being the owner of a certain tract of land, known as the John Parker, Sr., tract, entered into a written agreement, not under seal, with his son, William J. Martin, providing as follows : " Said John Martin doth agree to grant to said William J. Martin the right and privilege of digging all the ore on his place and lands; for which said William J. Martin doth consent and agree to pay said John Martin two hundred dollars, to be paid as follows: . . . . ." William J. Martin paid to John Martin the consideration money mentioned in the agreement and fully complied with all its terms.    By several mesne conveyances William J. Martin's rights under said agreement became vested, in 1876, in the Dunbar Furnace Co., the defendant.

On January 21, 1862, John Martin conveyed to Catharine C. Fairchild, wife of Alexander Fairchild and mother of the plaintiffs, in fee simple, all his right, title, claim and interest in and to the John Parker, Sr., tract, except fifty acres thereof. This deed covered the land, the rights in which were in controversy.    In October, 1865, Catharine C. Fairchild died intestate, leaving her husband Alexander Fairchild, and her five children, the plaintiffs in this action, who were at that time all minors, surviving.    John W. Fairchild was the eldest of these children.

On November 15, 1865, Alexander Fairchild entered into a written agreement with the Youghiogheny Iron & Coal Co., by which in consideration of its agreement to convey to him a certain tract of land containing 100 acres, he agreed to convey to said company, " the free and uninterrupted right of way in, upon and out of all that tract, being the John Parker, Sr., tract, for the uses and purposes following, namely :. To build and construct and use tram or other roads, to build cabins, ·houses, etc., near the line of the tram road, to dig and mine iron ore and remove the same off the premises, to cut and make use of such timber growing upon said premises (except such chestnut oak trees as will make bark, and locust timber trees) as may be needed for constructing and using such roads and mining or digging and removing said iron ore."    The agreement further provided that the coal company should make and deliver to Alexander Fairchild a good and sufficient deed for said 100 acres, upon receiving from him and any other par-

ties that had or might have the right or title thereto, a good and sufficient deed for the rights, liberties and privileges which he had agreed to convey to said company, and Fairchild agreed to execute and deliver said deed and to obtain such other deeds or assurances as might be necessary to fully vest the same in said company, without delay.

Alexander Fairchild took possession of the 100 acres so sold to him and occupied it until his death in 1872. After his death his children, the plaintiffs, claimed and used it as his heirs at law. Whatever title was acquired by the Youghiogheny Iron & Coal Co. in the Parker tract, under its agreement with Alexander Fairchild, became vested in the defendant prior to the trespass complained of. It was stated in the paper books for the defendant that the defendant and its predecessors had continuously carried on the cutting of timber from soon after the making of this agreement until the commencement of this action.

Between the years 1876 and 1881 the defendant company took from the land owned by the plaintiffs large quantities of ore and timber and considerable testimony was given as to their amount and value. During portions of that period, John W., W. W., and James A. Fairchild, three of the plaintiffs, were working for the defendant company, or its contractors, in digging ore at its mines on the land in question, and in connection with their work made use of some of the timber cut on their land by the defendant. There was testimony on the part of the plaintiffs to prove that in 1876, and also in 1878, John W. Fairchild notified John McClavey, the mining superintendent, and A. B. DeSaulles, the president and manager of the defendant company, that the ore and timber on this land belonged to the plaintiffs and the defendant would have to pay for them. ¶ On the part of the defendant, a deed was put in evidence from John W. Fairchild and wife and Jane E. Pill and husband, said John and Jane being two of the plaintiffs, to Ellen A. Russell et al., dated November 4, 1882, whereby the grantors therein conveyed the undivided two fifths of the tract of land which John Martin had sold to Catharine C. Fairchild, and also the undivided two fifths of the 100 acre tract, described as that " which the Youghiogheny Iron & Coal Co. conveyed to the said Fairchilds in consideration of their granting permission to the said Youghiogheny Iron & Coal Co. to build and construct and use tram

and other roads, to build houses, cabins, etc., near the line of the tram road, to dig and mine iron ore and remove the same off the premises, to cut and make use of such timber growing upon said premises (except such chestnut oak trees as will make bark, and locust timber trees) as may be needed for constructing, and using said road and mining, digging or removing the ore.    The said ore being reserved by said company and not transferred to the Fairchilds, as also all the coal and other minerals underlying the said tract of one hundred (100) acres, together," etc.

At the conclusion of the testimony the court, HAZEN, P. J. 17th district, specially presiding, charged the jury in part as follows:

Plaintiffs claim, as we have already stated, the fee to this land.    But there is another question comes up: Was the conveyance from John Martin to Catharine C. Fairchild a conveyance of the whole of the land as it would appear to be from the face of the deed?    Another element comes in, [an article of agreement or license, as it has been variously termed by the respective sides, dated April 1, 1854, from John Martin to William J. Martin, wherein John Martin grants in the following words to William J. Martin : " Doth agree to grant to said William J. Martin the right and privilege of digging all the ore on his place and lands; for which said William J. Martin doth consent and agree to pay said John Martin two hundred dollars, to be paid as follows : . . . . ." In this it is claimed there was only a license.    A license is a privilege to go upon the land of another for some purpose sought for by the grantee, as a right of way over his land, or to throw water back upon it, or to construct a mill-race through it.    It may be a bare license, not accompanied with any expenditure on the part of the grantee.    In such case, it is at any time and at all times revocable.    In the case in point, if the license had been granted, and before any expenditure upon the faith of the grant by William J. Martin, John Martin had revoked it, the privilege would have ceased.    But in this case we do not consider that this alleged contract, as offered and received and read in evidence, creates any interest in the lands of John Martin, but establishes a license for the purpose and intent expressed therein; and that intent, from the plain language of the instrument, was that

William J. Martin should have, on payment of the consideration therein named, a grant of the right and privilege "to dig all the ore on his place and lands." There is no dispute about the lands in question, neither is there any dispute that those two parties were competent then to make this agreement, or license, or whatever other name it may be called, but revocable as such, if revoked before any consideration therefor was paid, or any necessary expenditure made by William J. Martin in pursuance of it; but the paper covers credits thereon paid by the grantee, and if the uncontradicted, the 'undisputed testimony of William J. Martin on this point be believed, corroborative of the paper itself, then all the consideration therein named was paid, has been paid, and it ceases to be a mere revocable license and becomes a contract not revocable at the will of the grantor.] [1]

[Then, gentlemen, having reached that conclusion, William J. Martin had a right to mine and remove the iron ore from the lands of John Martin, the lands upon which this trespass is alleged to have been committed. On October 12, 1855, William J. Martin by articles of agreement agrees to convey to Franklin Baldwin and Charles Cheney "all his right, title, interest and claim in and to all the ore and mining privileges belonging to that certain piece of ground situate in Dunbar township, Fayette county, Pennsylvania, and known by the name of the John Parker, Sr., tract, containing four hundred and twelve acres." Under this, it is admitted that the defendant is the owner of whatever rights William J. Martin had. It has been argued with considerable force that that was a personal matter and not transferable by William J. Martin. Be that as it may, for the purposes of this issue it is immaterial. It is an undisputed fact that William J. Martin, the person named in that license or agreement from John Martin to William J. Martin, was in court and upon the witness stand, and he in person, or those who under him would take the ore out, would be protected so far as this agreement gives the right.] [2] [Then, gentlemen, the title to that ore as we hold, was in the defendant, and so far as that is concerned you need not give it any further attention.] [3]

Then as to the position the plaintiffs occupy towards this land. During the life of their father, the life tenant, they had no claim to work the mines opened upon it, with those rights

Charge of Court below.

that are incident and necessary for that purpose and that alone. In his agreement with defendant, or those under whom defendant holds, he reserved certain timber that did not by that agreement pass to the defendant. After his death the plaintiffs came into possession in fee of this land, subject to the ore right in the defendants. At that time, just how many of these parties claimed to be minors is not shown; but when this suit was brought, one at least was under age. Then a covenant by Alexander Fairchild in this agreement with defendant was a covenant that was not within his power to carry out; for he agreed in that, if anything is clear, to convey an interest of a minor, which interest could not be conveyed save by and through the Orphans' Court over which he was powerless, had no jurisdiction. This is right in the line of the title, and other references, other affirmative statements in this agreement, show that clearly in the line of title, so that defendant taking rights under that agreement belonging to the life-estate and remainder over to the children of Mrs. Fairchild, was apprised of the kind of title that the party, Alexander Fairchild, had. And the covenants in this agreement to convey, by each party, so far as appears, have not up to the time of bringing suit been carried into effect, but each party went into possession; but there doesn't seem to have been any effort upon the part of any or either of the parties to carry out the covenants in that agreement, except to take possession. Then, when Alexander Fairchild died, he was in possession of the land, and the rights that he had would descend to his children; but what covenants descend to and are obligatory and binding upon the plaintiffs or any of them, is not clear to this court. Then, we hold, that while the parties defendant were upon the land mining ore as a matter of right—in other words, rightfully upon the land to do those things which were incident and necessary and granted them under the license from John Martin to William J. Martin which they held, any other things they chose to do while there, in the nature of a trespass, they are liable for.

That brings the question then to a matter of payment. A large number of witnesses were introduced on both sides, persons from the vicinity in a position to know, who were sworn and testified in your hearing in regard to the amount of timber on the land there was there in 1876, and the inquiry here is

limited to the amount of timber there was there in 1876 and down to 1881, the time of the bringing of this suit. Anything prior to 1876 or after 1881, the time of the bringing of this suit, you need not take any account of. . . . . .

The counsel on the part of the defendant ask the court to instruct you upon the following points, and this in a measure abbreviates what the court possibly would have to say further in this matter, but this condenses it, and we will confine what we have further to say to you, to answering the points.

1. The plaintiffs' ancestor, Alexander Fairchild, granted to the defendant's predecessors in title, ore and timber rights on the tract in question, and under the evidence in the case John Fairchild, one of the plaintiffs, is bound as by a collateral warranty which descends upon him from his ancestor, and the verdict must be for the defendant.

Answer: This is not affirmed.[a]

2. If the jury find that the plaintiffs inherited from their father, Alexander Fairchild, 100 acres of land, which he received from the Youghiogheny Iron & Coal Co., as a consideration for the timber right granted by the deed of November 15, 1865, and the plaintiffs have continued to enjoy the possession of the same, have exercised the rights of ownership over it, and some of them have conveyed their title therein, then the plaintiffs are estopped from disputing the validity of the title of the defendant to the ore and timber granted by the agreement of November 15, 1865.

Answer: This is not affirmed. The agreement of November 15, 1865, is an executory contract, not a deed, never consummated by either party beyond possession of the land, and upon its face are conditions wherein Fairchild covenanted to do what he could not do, save by leave of the Orphans' Court, and this, a matter in the line of the title, was notice to the defendant of that fact, and it cannot take advantage of it.[b]

3. This is an action of trespass based upon an alleged wrongful entry by defendant upon plaintiffs' land and for the wrongful carrying away of ore and timber. There is evidence in the cause tending to show that the defendant, or its predecessors, were upon the land rightfully to mine ore under the Martin agreement of 1855. If the jury find that the defendant was so upon the land, it is not liable in this form of action for taking .

the timber, even though such timber were the property of the plaintiff.

Answer: This is not affirmed.[c]

4. There is evidence in the cause tending to show that the defendant and its predecessors were upon the property, exercising in good faith rights which they believed belonged to them under the Alexander Fairchild agreement of November 15, 1865. If the jury find that the defendant removed the ore and timber sued for while thus continuously upon the property — its original entry upon the same having been lawful — then there was no trespass upon which this action can be maintained.

Answer: This is not affirmed.[d]

5. The defendant who is the grantee of the rights of W. J. Martin to remove ore under the agreement of 1854 is not liable to plaintiffs for the ore which it has taken, and no recovery can be had on that account.

Answer: This is affirmed.[4]

6. Under the evidence plaintiffs are not entitled to recover for the ore.

Answer: This is affirmed.[5]

7. The plaintiffs are not entitled in this action upon the pleadings or evidence, to a recovery of treble damages.

Answer: This is affirmed.[6]

8. The plaintiffs having first declared in this cause for treble damages in the amended narr, filed December 18, 1888, and there being no proof in the cause of the mining of ore or cutting of timber since 1881, there can be no recovery on that account.

Answer: This is affirmed.[7]

9. The plaintiffs having filed on December 18, 1888, an amended narr, changing their cause of action and declaring under the statute for treble damages, and there being no evidence of the mining of ore or cutting of timber since 1881, the verdict must be for the defendant.

Answer: This is not affirmed.[e]

11. That under all the evidence in the case the verdict should be for the defendant.

Answer: This is not affirmed.[f]

The jury returned a verdict in favor of the plaintiffs, "dam-

ages to the amount of $1,000 for timber, $450 interest, amount $1,450." Thereupon, on motion of the plaintiffs, a rule was granted on the defendant to show cause why the damages should not be trebled, which rule the court subsequently discharged.[8]  Judgment having been entered on the verdict as returned, the plaintiffs took the writ to No. 445 January Term 1889, assigning as error :

1–3. The portions of the charge embraced in [ ] [1 to 3]

4–7. The answers to the defendant's points.[4 to 7]

8. The order refusing the motion to treble damages.[8]

The defendant took the writ to No. 20 July Term 1889, assigning as error :

1–6. The answers to defendant's points.[a to f]

7. The order permitting the amended narr to be filed.[g]

*Mr. Edward Campbell* (with him *Mr. R. P. Kennedy*), for John W. Fairchild et al.:

1. The only rights which William J. Martin acquired under the agreement with his father were mere personal privileges, not transferable.  That agreement was simply a parol contract: Wait's Act. and Def. 72 ; Campbell's Est., 7 Pa. 101.  Even if a contract for an interest in land, it was never executed, for a distinct transfer of possession of the ore was impossible.  Caldwell v. Fulton, 31 Pa. 475, does not apply to this case, because it was decided upon a deed.  And in Funk v. Haldeman, 53 Pa. 237, although the instrument in question there was in substance a deed of conveyance, this court held that no estate in soil or minerals was granted thereby.  The payment of a consideration never of itself makes a license irrevocable : Bouv. Dict., title License; Cook v. Stearns, 11 Mass. 533 ; 1 Washb. on Real Prop., 398–400 ; Huff v. McCauley, 53 Pa. 206.

2. As to amending the narr and trebling the damages, the acts of assembly clearly give the plaintiffs all the rights they claim.  They have a right to amend as often as is necessary to cover their case as shown by the evidence, so long as the original cause of action is not changed.  The parties may even go to trial without any narr at all : Jones v. Freyer, 3 W. N. 365. A declaration may be amended after writ of error sued out : Wampler v. Shissler, 1 W. & S. 365.  If the facts necessary to sustain this verdict are to be found in the testimony, this

court will not reverse the judgment: Downing v. Lindsay, 2 Pa. 382; Morris v. McNamee, 17 Pa. 173; Spackman v. Byers, 6 S. & R. 385; Miller v. Weeks, 22 Pa. 89; Trego v. Lewis, 58 Pa. 463.

3. There has been no change in the cause of action in this case. The plaintiffs never claimed damages for anything but their ore and timber. The question from first to last has been, as it stands now, how much shall the defendant pay for these? This court said, when the case was here before, that a claim of the timber by the defendant, with the knowledge it had of the title papers, could not be regarded as a bona fide claim of right. It is not denied that the defendant converted the timber to its own use. Why then should not the plaintiffs have treble damages for it under the act of March 29, 1824, 8 Sm. L. 283, and treble the value of the ore taken under the same circumstances, according to the act of May 8, 1876, P. L. 142? These are beneficial laws, as the case of McCloskey v. Powell, 23 W. N. 183, clearly demonstrates.

*Mr. R. C. Dale* (with him *Mr. S. L. Mestrezat*), for the Dunbar Furnace Company:

1. The agreement between John Martin and William J. Martin was an executory agreement and therefore effectual to pass a fee without words of inheritance: Defraunce v. Brooks, 8 W. & S. 67; Gaule v. Belyeau, 25 Pa. 521; Ogden v. Brown, 33 Pa. 247. Its true construction shows the purpose to have been to give William the right to remove all the ore, and it consequently vested in him the entire ownership of the minerals in place: Caldwell v. Fulton, 31 Pa. 475; Funk v. Haldeman, 53 Pa. 243; Clement v. Youngman, 40 Pa. 344.

2. The plaintiffs were not entitled to recover at all in this action. The law of collateral warranty, though not often referred to now, is a part of the common law incorporated in the jurisprudence of this state: Eshelman v. Hoke, 2 Y. 509. This warranty descends upon the eldest son, the heir at common law: Jourdan v. Jourdan, 9 S. & R. 268. Hence, as assets descended from Alexander Fairchild to his children, John W. Fairchild, the eldest son, would be bound by a collateral warranty, if the agreement between his father, the life-tenant, and the Youghiogheny Coal & Iron Company had been a war-

ranty deed. And, the action being joint, if it fails as to one of the plaintiffs, it fails as to all.

3. It is true the agreement between their father and the coal company does not contain formal covenants of warranty, but as the plaintiffs have in the most unmistakable manner claimed under that agreement the 100 acres which their father received as the consideration of his grant of the ore and timber, they cannot repudiate the efficiency of the grant so made: Ewing v. Desilver, 8 S. & R. 92; Olwine v. Holman, 23 Pa. 279.

4. This is not a case in which trespass can be maintained. The basis of the action is a wrongful entry, and the evidence shows that the defendant and its predecessors were lawfully upon the land under the Martin agreement of 1855. Moreover, during Alexander Fairchild's life the possession was rightful under the grant given by him, and the possession after his death was but a continuation of that previously held. There being no wrongful entry, the action of trespass quare clausum fregit cannot be maintained: Six Carpenters' Case, 8 Co. 146; s. c. 1 Sm. L. C. *143; Berkey v. Auman, 91 Pa. 481.

5. The court should not have permitted the filing of the amended narr of December, 1888. An amendment changing the cause of action is not allowable: Royse v. May, 93 Pa. 454; Steffy v. Carpenter, 37 Pa. 41: Trego v. Lewis, 58 Pa. 463. The original narr and that filed in December, 1888, set out different causes of action: Dunbar Furnace Co. v. Fairchild, 121 Pa. 563. The two remedies are alternative: Hughes v. Stevens, 36 Pa. 320; and the amendment made should not be allowed to deprive the defendant of its rights: Tyrrill v. Lamb, 96 Pa. 464; Bank v. Shoemaker, 117 Pa. 102. The action under the statute should be treated as if brought on the date of the amendment, and it was at that time barred. Nor can the plaintiffs recover single damages under their original narr, because the two actions are alternative and cannot be joined, and having elected to declare on the statute, the original counts are out of the case: Smith v. Meanor, 16 S. & R. 375.

FAIRCHILD v. DUNBAR FURNACE CO.

OPINION, MR. JUSTICE CLARK:

The first question arising upon this record is as to the force and effect of the written agreement, dated April 1, 1854, be-

tween John Martin and his son William J. Martin. By this agreement John Martin agreed " to grant to said William J. Martin the right and privilege of digging *all* the ore on his place and lands; for which said William J. Martin doth covenant and agree to pay said John Martin $200," etc. The learned judge of the court below was of opinion that this was a license merely, revocable at the outset, but which, upon payment of the consideration, became irrevocable. We are clearly of opinion, however, that by the terms of the instrument William J. Martin was in equity invested with the right and title to this ore. The agreement was not under seal, nor did it contain the formal parts of a deed, but it was in writing, and that was sufficient to relieve the transaction from the ban of the statute of frauds. It was in form an executory agreement only, yet in equity it was a conveyance of the title to the ore. It was effectual to pass the title in fee, for when the consideration evinces that nothing less than a fee is intended, equity will supply the words of inheritance. It was not only a grant of the right to dig ore; it was a grant of the right and privilege to dig " all the ore on his place and lands," and for a sum in solido, which was paid in full. The case bears the closest analogy in principle with Caldwell v. Fulton, 31 Pa. 475; the only difference being that in that case the transaction was executed by a deed, whilst here it is contained in an executory agreement. As the rights of William J. Martin, by a series of conveyances, have become vested in the defendant, it follows that the court was right in refusing the plaintiffs' claim for the price of the ore. This refusal was placed upon somewhat different grounds, but the result is right, and we will not find fault with the course of reasoning by which that result was obtained.

The court was also right in refusing to treble the damages. The summons was issued August 25, 1881. The action, as defined by the declaration originally filed, was an action in trespass at the common law. The amendments of November 27 and December 2, 1886, were to the same effect. Not until December 18, 1888, did the plaintiff declare specially upon the terms of the act of 1824 for treble damages. In Hughes v. Stevens, 36 Pa. 320, it is said: " The statutory action is cumulative to the common-law remedy; or, perhaps, rather an optional or

alternative remedy, for a resort to either would be a bar to the other."

The cause of action is the matter for which an action may be brought, and it may be said to accrue when there is a right of action, a party to assert that right, and a party against whom it may be lawfully asserted. This action of trespass, being brought at the common law, was brought to redress the injury done, by an award of compensation ; but the action under the statute is not for a redress of the injury ; it is to recover a penalty prescribed by the statute, which, as a police regulation, is intended for the protection of real property from waste by those who either negligently or wilfully intrude upon the lands of others. The cause of action accruing under this statute, although arising on the same matter, is different from that accruing at common law, and whilst, perhaps, they may be joined in one action, there can be but one recovery. An amendment to a declaration will not be allowed if a new cause of action is thereby introduced. It will not be allowed unless it plainly appears that the amendment is a mere specification of a claim already counted upon, especially where the new cause is so old as to have been barred by the statute of limitations: Wright v. Hart, 44 Pa. 454 ; Smith v. Smith, 45 Pa. 403.

The judgment is affirmed.

DUNBAR FURNACE CO. v. FAIRCHILD.

OPINION, Mr. JUSTICE CLARK:

The agreement between Alexander Fairchild and the Youghiogheny Iron & Coal Company, dated November 15, 1865, was an agreement under seal. But it was an executory agreement only, and it is difficult to see how any question of collateral warranty, or any question akin to that, could be supposed to arise in such a case. If the conveyance of the rights mentioned in that agreement had been by deed, with covenants of warranty of title in the usual form, it may be that this warranty of the father, with sufficient real assets descending from him to his children, under the rule of Carson v. Cemetery Co., 104 Pa. 575, would operate as a bar to the plaintiffs' recovery in this case. But no such case is presented for our consideration, and it is unnecessary to pursue that question further.

Nor can we discover any ground for an estoppel, legal or

equitable.    The only ground alleged is the deed from the Fair-
child heirs to Russell, dated the 4th of November, 1882, the
recitals of which admit that the land thereby conveyed was
the same land which the father had acquired from the Youghi-
ogheny Iron & Coal Company, in consideration of the rights
which he agreed to give the company under the executory
agreement mentioned.    But these recitals were simply by way
of a description of the land; and, whilst they may be deemed
admissions as to the identity of the tract, we cannot see that
the effect of these admissions or declarations, or even the deed
itself, could raise an estoppel.    The company's right of re-
course upon the estate of Alexander Fairchild, after his death,
was unaffected by this deed, or by any of its recitals.    The lien
of the debt, or the damages sustained from the breach of the con-
tract, remained after the deed as before.    The deed, therefore,
did nothing to the company's injury, nor was the condition of
the company thereby in any respect changed.    ·It is not pre-
tended that the plaintiffs who were entitled in remainder al-
lowed their father to hold himself out to the world as the
owner, or that they misrepresented the title; that they stood
by and encouraged the execution of the contract, or that they
ever knew such a transaction was on foot.    Indeed, it is not
even alleged that they did anything which amounted to the
suggestion of a falsehood; that they concealed their rights or
suppressed the truth; that they were silent when they should
have spoken, or that anything that they did influenced the con-
duct of the defendant, or misled them in any way to their in-
jury.    On the contrary, it is admitted that in the recitals of
the Russell deed they spoke the exact truth, and concealed
nothing.    It amounts to this: that Alexander Fairchild, who
was a tenant for life only, acting for himself, and for· himself
alone, granted, or attempted to grant, for a certain considera-
tion, certain privileges, the duration and extent of which the
grantor and grantees well knew at the time were in excess of
his right.    The consideration, having been paid in hand, was,
at the grantor's death, a portion of his estate, and those enti-
tled in remainder are sought to be estopped, simply because
this consideration forms part of their inheritance from their
father.    No case has been brought to our notice which carries
the doctrine of estoppel to this length.

· It is very plain that Alexander Fairchild intended to convey, not only upon the basis of his own interest as tenant by the curtesy, but also of the interest of those in remainder ; for he expressly agreed, " without delay, to obtain such other deeds or assurances in the law as might be necessary to vesting the title in the company." If, therefore, he had subsequently become seised absolutely of the estate, an estoppel would certainly have arisen, and rendered the contract effectual to its full extent, for that was its meaning as manifest in its language, and this estoppel would have extended to the heirs of Alexander Fairchild. But the difficulty is that the plaintiffs do not claim as the heirs of Alexander Fairchild, but as the heirs of his wife.

Nor can we see any ground for the argument that, under the special facts of this case, an action of trespass would not lie. The right which Alexander Fairchild had granted to the Youghiogheny Iron & Coal Company was a right to dig ore and cut timber on this land. This right was consistent with the possession of the land by the grantors, and we find that Alexander Fairchild, in his lifetime, and the plaintiffs, at his decease, were in the actual and continuous possession of the land. The right granted by Alexander Fairchild ceased at his death. After that event, it is clear that the company had no further privilege of the timber, and any invasion of the tract for the purpose of cutting timber was a trespass upon the plaintiffs' possession.

We are of opinion that the judgment must be affirmed.

　　　　　　　　　　　　　　　. Judgment affirmed.