# Myer, Appellant, *v.* Curry et al.

*Mines and mining—Illegal mining—Coal—Treble damages— Evidence as to character of coal mined—Judgment n. o. v.—Trespass—Claim of right—Profits—Act of May 8, 1876, P. L. 142.*

1. In an action to recover treble damages for the alleged illegal mining of coal, the trial court will be reversed in entering judgment for defendant n. o. v., on the ground that the coal mined by defendants was not black, merchantable stone coal as designated in plaintiff's title deed, but was soft red coal or soft black coal, where a review of the evidence by the appellate court shows that there was no evidence to indicate that it was red, except stains of red at the outcrop and other places, that it was in fact merchantable, and was stone coal as the term was used in the district.

2. In such case, where a second reason for the judgment for defendant n. o. v. was that the coal in question was not covered by plaintiff's deeds and the appellate court is of opinion that it cannot dispose of the case on this ground as a matter of law, without further light, it will remit the record to the court below to pass upon the second reason.

3. If it shall be the opinion of the lower court, on consideration, that judgment should be entered for defendant on that ground, then the case may be brought up for review with the light shed upon it by the lower court's opinion.

4. If the court below shall conclude that plaintiff has shown title to the coal, then it must dismiss the motion for judgment n. o. v. and reinstate the motion for a new trial, and, on that motion, make such order as to justice and right may be deemed proper.

5. It seems that treble damages may not be recovered under the Act of May 8, 1876, P. L. 142, where defendants claimed the right to mine under a lease and were therefore not wilful trespassers. All that plaintiff can claim are the profits received by defendants.

Argued September 30, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 79, March T., 1926, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1923, No. 1329, for defendant n. o. v., in case of Gilbert F. Myer v. Albert Curry and the Colonial Trust Co. of Pittsburgh, administrators of the estate of William L. Curry, deceased, and Rudolph W. Stuler. Judgment set aside and record remitted.

Trespass for treble damages for alleged illegal mining of coal. Before MCVICAR, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $27,000, with findings that $17,300 was on account of profits. Judgment for defendant n. o. v.

*Errors assigned* were, inter alia, judgment, quoting record, and various findings of the court in its opinion, entering judgment n. o. v., quoting them.

*John C. Bane,* with him *A. M. Simon* and *Robert Mellin,* for appellant.—The coal was "black" within the meaning of the deed.

The coal was "merchantable" within the meaning of the deed: McKelvy v. Coal Co., 283 Pa. 227.

The precise question, whether plaintiff has the right to recover these profits from defendants, does not appear to have been finally decided by this court: Matthews v. Rush, 262 Pa. 524.

Probably the leading case on this subject, originating in the State of Illinois, and finally taken by certiorari to the Supreme Court of the United States, is Guffey v.

Smith, 237 U. S. 101; see also Pine River Logging Co. v. U. S. 186 U. S. 279; Union Naval Stores v. U. S., 240 U. S. 284.

*William A. Jordan,* with him *Thomas D. Chantler,* for appellees.—Appellant, by his title deeds, under the McClure Farm, took title to black, merchantable stone coal only, and as the same was understood to be black merchantable stone coal in August of 1878.

Appellees aver that the appellant, by his title deeds, took title to "114 acres and 152.83 perches of unmined coal in the seam that is now being worked according to a survey of said coal made by R. F. Hunter in April and May, 1878," and to no other or further or additional coal, in so far as the rights of the appellees are concerned.

Appellees, in beginning and carrying on their mining operations, did so under this lease from F. A. McClure, the owner, without any notice or knowledge of appellant's claim, and under a clear claim of right, and paid in full the royalty therein provided. They entered in good faith, with apparently a good legal title and legal right under this lease. They had a right to rely upon the title of their lessor, and believe it was good, and when they subsequently received the letter from appellant's counsel, dated August 23, 1922, they simply had notice of a dispute as to title to coal, the right to mine which they believed they had under their lease: Rhoads v. Coal Co., 238 Pa. 283; Matthews v. Rush, 262 Pa. 524; Kingston Trustees v. Coal Co., 241 Pa. 481.

Appellant is not entitled to recover profits: Matthews v. Rush, 262 Pa. 524; Hughes v. Stevens, 36 Pa. 320; Dunbar Furnace Co. v. Fairchild, 121 Pa. 563; McCloskey v. Powell, 138 Pa. 383; Hall v. R. R., 257 Pa. 54; Jackson v. Gunton, 26 Pa. Superior Ct. 203; Olson v. McLaughlin, 64 Pa. Superior Ct. 354; Wilmore Coal Co. v. Holsopple, 68 Pa. Superior Ct. 290.

OPINION BY MR. JUSTICE SCHAFFER, November 22, 1926:

The action is trespass to recover treble damages for the wrongful mining by defendants of certain coal alleged to belong to plaintiff and the profits received by defendants therefrom. The verdict was in plaintiff's favor. The court entered judgment for defendants non obstante veredicto. Plaintiff appeals.

John Penny is the common source of title of both parties to the suit. He became bankrupt and on August 31, 1878, his assignees in bankruptcy conveyed certain coal which had belonged to him to J. B. Sneathen and others. It is under this deed that appellant claims title to the coal in controversy. It conveys a tract of land by courses and distances, containing 14 acres and 140 perches, "on which are erected the coal tipple, incline railroad, check house and other buildings and improvements connected with the coal works of the late John Penny.

"Also in connection with the real estate above described all the black merchantable stone coal in the coal seam that has been opened and worked by said bankrupt and underlying the said land and other adjoining lands of said bankrupt in said township bounded by the Youghiogheny River by lands of [certain persons named] and also in connection with the same all the stone coal underlying the tract of land known as the 'Caughey Farm' in said township adjoining said last-mentioned land of said bankrupt being the same coal that was conveyed [by a recited deed].

"Also in connection with the same all the stone coal underlying lands of Hiram Edmundson in said township adjoining said last-mentioned land of said bankrupt being the same coal that was conveyed by the deed of said Hiram Edmundson and his wife dated January 25, A. D. 1858, and recorded in Deed Book 132, page 355, as by reference to said deeds will more fully and at large appear, embracing in all 114 acres 152.83 perches of un-

mined coal in the seam that is now being worked, according to a survey of said coal made by R. F. Hunter at the request of the parties of the first part in April and May A. D. 1878, a plan of which survey is attached to and made part of the petition aforesaid." The deed to plaintiff and the intervening ones use substantially the same language in describing the land and coal conveyed.

Defendants are the lessees from F. A. McClure who claims through Andrew McClure, to whom the assignees of John Penny, on October 23, 1878, conveyed a tract of land containing 203 acres and 18 perches "excepting and reserving therefrom and thereout, however, all the black merchantable stone coal in the coal seam that is now being worked, together with all the rights and privileges necessary to the convenient and successful mining and taking out of said coal, being part of the same coal and mining privileges which have been conveyed to John B. Sneathen et al. by deed dated August 31, 1878."

Defendants' motion for judgment non obstante veredicto was based on two grounds, first, that there was no evidence to submit to the jury that the coal mined by defendants was black merchantable stone coal, within the meaning of the language contained in the deed from the assignees in bankruptcy to Sneathen et al.; but that on the contrary it was shown to be soft red coal or soft black coal; second, that the coal conveyed by the deed to plaintiff's predecessors embraced in all 114 acres and 152.83 perches in accordance with the survey made by Hunter, and that the coal mined was not included within the boundaries of the coal in the survey and the deed. The court was of opinion that the first reason should be sustained, and, therefore, that it was not necessary to discuss the second. We are of one mind in concluding that the court erred in entering judgment for defendant for the first reason; the second has given us much concern. We have concluded that the question raised by it is not so clear and indisputable as to warrant our entering judgment for defendant without further light.

The trial court decided that the coal was not shown to be black, to be merchantable in 1878, or to be stone coal.   Our judgment is not only that the court erred in its determination, but that under the evidence the coal which was mined by defendants was black coal, was merchantable, and, that it was stone coal within the meaning of the words used in the deed.   All that was shown to indicate that the coal was not black coal was that it was stained red at the outcrop and in other places in the mine, very likely by sulphur water or other chemical action.   That this takes place is a matter of common knowledge, but it does not make the coal any the less black .coal.   Indeed, witnesses testified that when the coal, which was red on the surface, was broken the inside of it was black. The court below in its opinion on the motion for judgment non obstante veredicto says, "The undisputed evidence is that the coal was wholly in the Pittsburgh vein, and that the Pittsburgh vein was the same as had been opened and worked by John Penny. So there is no question that the coal mined was of the seam designated in the deed from the assignees of John Penny." It is stated in appellant's brief that it is a matter of common knowledge that the Pittsburgh vein of coal, with the exception only of small portions at the extreme edge of the stratum at the point of an outcrop, is black.

The court's conclusion was that the merchantability of the coal was to be fixed as of the date of the deed in 1878, but we can discover no such limitation in the conveyance.   It was unquestionably merchantable in 1922 when defendants mined and sold it and its merchantability at that time was sufficient under the language of the grant.   The court was of opinion that the coal was not stone coal because it was soft.   So far as we have been able to discover there is .no definition on the record to show just what was meant by stone coal or its related hardness.   Even some stones are not hard and the test to be applied in determining the hardness of coal so as to

meet the designation "stone coal" is nowhere shown in the record. It does affirmatively appear in the testimony that the term "stone coal" was originally used in early conveyances to differentiate it from charcoal. In McKelvy v. Wilkinsburg Domestic Coal Co., 283 Pa. 227, the coal which was the subject of the litigation was designated by a deed for it made in 1873 as "all the good black merchantable stone coal." A witness Blackburn called by plaintiff, who was a mining engineer and coal operator, testified that the words "stone coal" are used in dealings to designate the Pittsburgh seam of coal, one of the large veins in the district. In the Standard Dictionary, the words "stone coal" are defined as "mineral coal as distinguished from charcoal." We think the coal in question met the designation "stone coal" and that the court erred in determining otherwise.

The question of title to the coal mined has given us much trouble. The plan referred to in the deeds and made by R. F. Hunter has inscribed thereon the following legend: "Plan of the Penny Coal Mines Situated in Lincoln Township, Allegheny Co., Pa. Surveyed by request of Wm. Whigham & Madison Bailey, Assignees of John Penny. April & May, 1878. R. F. Hunter." This plan shows a number of tracts all designated by letters. The sum of the total acreage in the designated tracts agrees with the acreage called for in the deeds, 114 acres 152.83 perches. It is admitted by plaintiff that none of the coal mined by defendants was mined out of these enumerated tracts.

Plaintiff's contention is that the deed from the assignees of Penny to Sneathen operated to convey four separate and contiguous parcels of real estate and that the language of the grant as contained in the fourth description, "embracing in all 114 acres 152.83 perches," does not operate to couple the coal therein mentioned with the coal which is described in the second and third descriptions in the deed, or either of them. His counsel argue that the fourth description refers to the coal

described in the second and third descriptions only to the extent of stating that the coal described in the fourth description adjoins that described in the second and third; that there is no language in the fourth description which could be held to make the words "embracing in all 114 acres and 152.83 perches of unmined coal" refer to and include the coal described in the second and third descriptions; that the words in the second of the descriptions in the deed "Also in connection with the real estate above described all the black merchantable stone coal in the coal seam that has been owned and worked by said bankrupt, and underlying said land and other lands of said bankrupt in said township bounded," etc., cover the coal in controversy here; that the fourth description covers only the coal under the lands of Hiram Edmundson.

Plaintiff argues that the coal included in the fourth description "underlying the land of Hiram Edmundson" is separate and distinct from the coal included in the second and third descriptions; that it is not within the boundaries of the land of which the surface was afterwards conveyed by the assignees in bankruptcy of John Penny to Andrew McClure, and which is now owned by Francis A. McClure, and that there is nothing in the deed which would sustain a finding or conclusion that the language "embracing in all 114 acres and 152.83 perches of unmined coal" in the fourth description was intended by the grantors, or was understood by the grantees, to limit in any way whatever the coal referred to in the second description, being the coal in controversy  It is asserted that the actual operations conducted in the mining of the coal by Sneathen and his associates show that Andrew McClure, who then owned the surface overlying the coal, understood and construed the language of the deed to mean and to cover all of the coal in and under the land included in the second description, notwithstanding the fact that on the Hunter

plan all of its territory was marked by the words "coal out."

On the other hand, appellees, so far as this branch of the case is concerned, take their stand upon the proposition that by his title deeds appellant took title to 114 acres and 152.83 perches of unmined coal, and to no other or additional coal. They point to the language of the fourth description, urging that the wording of the deeds conveys the title strictly in accordance with the Hunter survey and covers 114 acres and 152.83 perches, as shown by it, and no more; that the plan conforms to the language of the deed, showing where and how the acreage is made up, and operates to limit the entire grant and conveyance of the coal, described in the deed, to 114 acres and 152.83 perches of solid unmined coal, and that the coal which was mined and removed by defendants, being stumps, ribs and smaller areas, was not a part of this body of solid unmined coal and was not a part of the coal which belonged to plaintiff.

Appellees point with great emphasis to this specific language of the deeds in appellant's chain of title, "Also in connection with the same all the stone coal underlying lands of Hiram Edmundson in said township and adjoining said last-mentioned land of said bankrupt, *being the same coal that was conveyed by the deed of Hiram Edmundson and his wife* dated January 25, 1858,......... embracing in all 114 acres and 152.83 perches," urging that the coal underlying the lands of Hiram Edmundson could not have been a separate tract of the acreage named, for the reason that the recited deed from Hiram Edmundson conveys three parcels, one of 1 acre and 110½ perches, another of 12 acres and 71.6 perches and a third of 111.9 perches, or a total of but 14 acres and 90 perches. They also call attention to the fact that in the record in the recorder's office the entire description as to the coal conveyed is run together in one paragraph and is not set forth in separate paragraphs beginning

with the word "also," as would seem to be indicated by the record before us.

In our thought, while the weight of the argument would seem to incline to the view that appellant did not own the coal which appellee mined, the situation nevertheless is not so clear,—particularly in view of evidence which, as we understand it, shows that John Penny may have mined outside of the tracts designated on the Hunter survey and that his right to so mine was not contested by Andrew McClure,—as to make us feel that the case should now be disposed of on this ground as a matter of law by us.

We have concluded that the record should be remitted to the court below in order that it may pass upon the second reason stated for entering judgment non obstante veredicto. If it shall be of opinion upon consideration that judgment should be entered for defendant on this ground, then that question can be brought before us for review, with the light shed upon it by the court's opinion. If the court shall conclude, however, that plaintiff has shown title to the coal, then it must dismiss the motion for judgment non obstante veredicto and reinstate the motion for a new trial and upon that motion make such order as to justice and right may seem proper. In this connection, we think it advisable to say that in our opinion there cannot be a recovery under the facts as they appear from the record both for treble damages under the act of assembly and for the profits received by defendants from the mining of the coal. It would seem to us that plaintiff's right of action is for the profits received by defendants, that defendants mined the coal under a claim of right so to do by virtue of the lease from McClure and that they were not wilful trespassers under the terms of the Act of May 8, 1876, P. L. 142: Rhoads v. Quemahoning Coal Co., 238 Pa. 283; Matthews v. Rush, 262 Pa. 524; Trustees of Kingston v. Lehigh Valley Coal Co., 241 Pa. 481; Fairchild v. Dun-

bar Furnace Co., 128 Pa. 485; Olson v. McLaughlin, 64 Pa. Superior Ct. 354.

The first assignment of error to the order directing judgment to be entered in favor of defendants and against plaintiff is sustained, the judgment is set aside and the record is remitted to the court below with instructions to dispose of the second reason for judgment for defendants non obstante veredicto; if judgment shall not be entered for defendants thereon, then it is directed that defendants' motion for a new trial shall be reinstated and that such order shall be made thereon as the court below may determine to be proper; all costs to abide final judgment.